# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:07cv251

| | | |
|---|---|---|
| MARGAE, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CLEAR LINK TECHNOLOGIES, LLC; | ) | |
| JAMES CLARKE; ALAN S. EARL; | ) | |
| PHIL HANSEN; BRUCE | ) | |
| WESTENSKOW; and BEN | ) | |
| HENDERSON, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court in accordance with 28, United States Code,

Section 636(b), and on defendants' Motion to Compel Arbitration and/or Transfer

Venue (#9) and Motion to Dismiss for lack of Personal Jurisdiction and Failure to State

a Claim (#12). Also before the court are plaintiff's Memorandum in Opposition to

Motion to Compel Arbitration and/or Transfer Venue (#18), plaintiff's Memorandum

in Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction and failure

to State a Claim (#19), and defendants' Reply Memorandum in Support of Motion to

Compel Arbitration and/or Transfer Venue (#22). Inasmuch as it appears that this

action should be transferred to the District of Utah due to a forum selection clause contained in the agreement between these parties, the undersigned will, for the reasons discussed below, recommend transfer of this action to the District of Utah and that the remainder of the dispositive motions be preserved for disposition by that court.

<strong>FINDINGS AND CONCLUSIONS</strong>

## I. Nature of the Action

This action was originally filed in the North Carolina General Court of Justice, Haywood County. <u>Margae, Inc. v. Clear Link Technologies, LLC, et al.</u>, 7CV00739 (2007). The action was removed to this court by defendants under a claim of diversity jurisdiction. Docket Entry 1.

For the limited purpose of the pending motions, the undersigned has accepted as true the factual allegations of the Complaint. In its Complaint, plaintiff contends that it is an "internet/e-commerce affiliate" that generates internet traffic and sales for its clients. Compl., at ¶ 11. Plaintiff also alleges that it had a contract with Defendant Clear Link technologies, LLC, to generate internet traffic and sales for such defendant, which in turn sold products or services for ADT, DIRECTV, the DISH Network, and HughesNet. Compl., at ¶ 14. Calls generated by plaintiff were to be directed to the corporate defendant's call center for the purpose of closing sales. Compl., at ¶¶ 15-16. When a directed call resulted in a sale, plaintiff was entitled to receive a commission.

Compl., at ¶¶ 17-18.

Plaintiff contends that beginning in April 2007, the corporate defendant began rerouting calls generated by plaintiff to other call centers and accounts of other affiliates, thereby breaching its duty to plaintiff to fully and accurately account for sales generated by plaintiff and pay plaintiff its commission. Compl., at ¶¶ 21-22. Further, plaintiff alleges that the individual defendants, who are alleged to be officers and employees of the corporate defendant, conspired to deprive plaintiff of his commissions and utilize plaintiff's work product without compensation. Compl., at ¶¶ 23-24.

Based on such allegations of fact, plaintiff has asserted six causes of action against these defendants:

(1)     First Claim for Relief:  breach of contract by the corporate defendant;

(2)     Second Claim for Relief: tortious interference with prospective economic advantage by all defendants;

(3)     Third Claim for Relief: Unfair and Deceptive Trade Practices as to all defendants;

(4)     Fourth Claim for Relief: unjust enrichment by the corporate defendant;

(5)     Fifth Claim for Relief: an accounting and appointment of a receiver as to the corporate defendant; and

(6)     Sixth Claim for Relief: civil conspiracy as to all defendants.

## II.     Defendants' Motion to Transfer Venue

Defendants have moved to transfer this case to the United States District Court for the United States District Court, District of Utah, Central Division. Rather than address dispositive motions or defendants' Motion to Compel Arbitration, which relies on a supplementation of the original contract between the parties,[1] the undersigned has determined that the Motion to Transfer Venue is a threshold concern.

In May 2006, plaintiff contracted with the corporate defendant to become a "Sales Partner" to generate sales leads for DIRECTV. Earle Aff., at ¶ 6. Plaintiff applied to become a Sales Partner through such defendant's website at www.usdirect.com. Id., at ¶ 7. As part of the application process, the corporate defendant contends that plaintiff agreed to the "Sales Partner Terms of Agreement" that governed the relationship between the corporate defendant and its Sales Partners at that time. Id., at ¶ 8.

By way of affidavit, defendants have shown that in order to apply to become a

---

[1]     The Motion to Compel Arbitration may well involve discovery inasmuch as plaintiff argues that it never agreed to such supplemental terms and appears to argue that such a material change to the original contract was not supported by any consideration. As discussed below, there is no doubt that in the original agreement the parties agreed that this type of action would be resolved in Utah utilizing Utah law. See Original Agreement, at ¶ 25.

Sales Partner through its website, a prospective Sales Partner was first directed to the Sales Partner Terms of Agreement. To continue with the application process, the prospective Sales Partner was required to click on a link that appeared adjacent to the Sales Partner Terms of Agreement, which link stated in colored, underlined text: "I accept these terms." According to defendants, the prospective Sales Partner could not complete the online application without clicking on that link, and thereby accepting the terms of the Sales Partner Terms of Agreement. Id., at ¶ 9. By completing its application online and clicking on the "I accept these terms" link, defendants contend that plaintiff agreed to the Sales Partner Terms of Agreement and became a Sales Partner for DIRECTV in May 2006. Id., at ¶ 10.

Not unlike credit cards, paragraph two of the Sales Partner Terms of Agreement contained the following provision:

> We may modify any of the terms and conditions contained in this Agreement, at any time and in our sole discretion, by posting a change notice or a new agreement on this site. Modifications may include, for example, changes in the scope of available referral fees, fee schedules, payment procedures and Program rules. IF ANY MODIFICATION IS UNACCEPTABLE TO YOU, YOUR ONLY RECOURSE IS TO TERMINATE THIS AGREEMENT. YOUR CONTINUED PARTICIPATION IN THE PROGRAM FOLLOWING OUR POSTING OF A CHANGE NOTICE OR NEW AGREEMENT ON OUR SITE WILL CONSTITUTE BINDING ACCEPTANCE OF THE CHANGE.

Ex. A, Sales Partner Terms of Agreement, at ¶ 2 (emphasis in original). Just like a

credit card, by continuing to operate under the contract as revised, the plaintiff would be bound by such new terms.

While plaintiff strongly disputes its receipt or acceptance of the later amendments which imposed mandatory arbitration, plaintiff's objections to the original contract appear to be in the nature of a technical failure. It is undisputed, however, that the original Sales Partner Terms of Agreement, under which the parties were at all relevant times operating, contains the following choice of law and forum selection provision:

> This Agreement will be governed by the laws of the United States and the State of Utah, without reference to rules governing choice of laws. Any action relating to this Agreement must be brought in the federal or state courts located in Salt Lake City, Utah, and you irrevocably consent to the jurisdiction of such courts.

See, Docket Entry 18-3, at ¶ 25.

In responding to defendants' motion, plaintiff's principal, Mark Goodman, avers that he was unable to complete the sign up process and that Defendant Earle completed the process for him. Plaintiff goes on to aver, however that

> Upon information and belief, the Terms and Conditions at the time Margae contracted with Clear Link for USDIRECT did not contain an arbitration provision or any other language regarding arbitration. As evidence of same, please see . . . Exhibit D which shows the terms and Conditions as the existed on . . . April 12, 2006.

Goodman Aff., at ¶ 14. Plaintiff's Exhibit D, Docket Entry 20-5, is an exact duplicate

of the contract submitted by defendants as docket entry 18-3, both of which clearly contain the same forum selection clause.

While plaintiff argues that he had difficulty in setting up the account, the affidavits presented by defendants clearly indicate that it was necessary for plaintiff to click on the "I accept" the terms of the agreement before defendants would process his application, and that in fact the system operated as designed. While this court will not reach the issue of whether the alleged subsequent modifications that required arbitration were offered and accepted, and whether consideration supports such modification, the original contract (the breach of which is the subject matter of this litigation) contains a forum selection clause and that clause provides for resolution of this action in Utah and application of Utah law. Thus, the issue for this court is whether such forum selection clause is valid and whether other considerations would support the discretionary transfer of this matter to the District of Utah.

Venue of an action that is removed to a federal court from a state court based on a claim of diversity jurisdiction is governed by the venue provisions of 28, United States Code, Section 1441(a). Godfredson v. JBC Legal Group, P.C., 387 F.Supp.2d 543, 547 (E.D.N.C.2005); see also Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc.,368 F.Supp.2d 450, 455-56 (D.Md. 2005). Section 1441(a) provides in relevant part that "any civil action brought in a State court of which the district courts

of the United States have original jurisdiction, may be removed by the defendant or the

defendants, *to the district court embracing the place where such action is pending.*"

28 U.S.C. § 1441(a)(emphasis added).  The district court in <u>Three M Enterprises, Inc.</u>

explained:

> By requiring removal to the district court for the district in which the state
> action is pending, Section 1441(a) "properly fixes the federal venue in
> that district." *Hollis v. Florida State University,* 259 F.3d 1295, 1300
> (11th Cir.2001). Indeed, courts have recognized that Section 1441(a)
> establishes federal venue in the district where the state action was
> pending "as a matter of law," even if venue would be "improper under
> state law when the action was originally filed." *See Hollis,* 259 F.3d at
> 1300 (citing *Serrano v. United States Fire Ins. Co.,* No. EP-00-CA-255-
> DB, 2000 WL 33348220, \*1-2 (W.D.Tex. Nov. 7, 2000); *Bacik v. Peek,*
> 888 F.Supp. 1405, 1413 (N.D.Ohio 1993); and R. Givens, 1 Manual of
> Federal Practice § 2.28 (5th ed.1998)).

<u>Id.</u>, at 454 (footnote omitted).   The district court in <u>Three M Enterprises, Inc.</u> went on

to note that while Section 1441(a) does not give "a removing defendant a choice of

districts to which to remove, and that it would not be entirely accurate to characterize

removal as the voluntary relinquishment of a legal right," it is  "the fact that the

removal statute establishes venue as a matter of law [that] precludes Defendants'

instant Motion to Dismiss or transfer the action based on <u>improper</u> venue."  <u>Id.</u>, at fn.

4 (citation and corresponding quotation marks deleted; emphasis added).  <u>See also</u>

<u>Kerobo v. Southwestern Clean Fuels Corp.</u>, 285 F.3d 531 (6th Cir. 2002)(venue in a

case removed from state court is governed solely by § 1441(a), requiring denial of

motion to dismiss or transfer venue under Section 1406(a)).  Chief Judge Flanagan in

the Eastern District of North Carolina wrote in Godfredson, as follows:

> Although defendants' reasoning is unassailable, their argument
> nonetheless suffers from a fatal flaw: 28 U.S.C. § 1391 does not apply
> when, as here, defendants remove a case to federal court from state court.

Godfredson v. JBC Legal Group, P.C. , supra, at 555.  The district court went on to

explain that

> Venue for a removed action is fixed . . .by the removal statute, 28 U.S.C.
> § 1441(a), which limits venue to "the district court of the United States
> for the district and division embracing the place where such action is
> pending." See id.; 28 U.S.C. § 1441(a). Because § 1441(a) only allows
> one possible venue for removal, "once a case is properly removed to
> federal court, a defendant cannot move to dismiss on § 1391 venue
> grounds."

Id., at 555 -56 (citation omitted).  Instead, venue must be considered under 1441(a).

Recognizing such distinction, defendants have relied on 28, United States Code,

Section 1404(a), in support of their request for discretionary transfer.  For cause,

defendant cites the court to the forum selection clause contained in the original

contract.[2]  As discussed above, plaintiff has attempted to show by way of affidavit that

---

[2]     Forum selection clauses "are *prima facie* valid and should be enforced
unless enforcement is shown by the resisting party to be 'unreasonable' under the
circumstances." The Bremen v. Zapata Off-Shore, Co., 407 U.S. 1, 10 (1972).  Since
venue selection agreements are mandatory, federal courts will enforce them unless
"enforcement would be unreasonable and unjust, or ... the clause [is] invalid for such
reasons as fraud or overreaching." Id., at 15.

he did not accept such contract due to a technical error. Defendants have replied to plaintiff's response and argued that plaintiff's affidavit provides *indicia* that the contract was entered into at arms length inasmuch as plaintiff bargained for and received a substantial benefit and that it was not possible for him to proceed further without accepting the terms of the contract.

Under the venue provisions of Section 1441, and the case law cited, by removing this action from state court, the Western District of North Carolina is a *proper* venue for the instant action as a matter of law. Where, as here,

> a district court is the appropriate forum for venue purposes under Section 1441, then a subsequent transfer to another federal district court must be based upon Section 1404(a) rather than on Section 1406(a) ....

See 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3726, at 123 (3d ed. 1998 & Supp.2005) (citations omitted). Defendants have, therefore, moved to transfer under the appropriate provision of Title 28.

> [A] defendant in a removed action, if it believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a).

Godfredson v. JBC Legal Group, P.C., supra, at 556 (citation omitted). Section 1404(a) provides, as follows:

For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

When this court is presented with a proper motion under Section 1404 that is based on a forum selection clause in a contract, "the Supreme Court has held that the validity of a forum selection clause is to be determined under federal law," Rice v. BellSouth Adver. & Publ'g Corp., 240 F.Supp.2d 526, 528 (W.D.N.C. 2002), and "[f]orum selection clauses are *prima facie* valid and enjoy a presumption of validity." Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 704 (M.D.N.C. 2007).

In Rice v. BellSouth Adver. & Publ'g Corp., 240 F. Supp. 2d 526, 528 (W.D.N.C. 2002), this court established four factors for determining whether a forum selection clause is unreasonable, which requires consideration of whether:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes b[e] deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

Id., at 529. Plaintiff has not shown that such clause was formed through overreaching, and in fact plaintiff's own web research indicates that the forum selection clause was contained in the contract plaintiff avers it attempted to accept that day. Thus, there is no fraud or overreaching. The court also finds no evidence of

grave inconvenience or unfairness in selection of the courts of Utah; while the courts of Utah are a substantial distance away, it is the same distance defendants have had to travel to defend this action in this forum. As a matter of law, there is no fundamental unfairness in applying Utah contract law inasmuch as the agreement between these parties appears to have also provided that Utah law shall be applicable. While the enforcement of any forum selection clause that does not specify North Carolina as the forum would contravene the "strong public policy of North Carolina," N.C.Gen.Stat. § 22B-3, such a policy does not invalidate the forum selection clause. Thus, weighing these factors the court determines that the forum selection clause is reasonable and having determined that the agreement is valid, the court will next consider other relevant factors that are part of the Section 1404(a) analysis.

In Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93 (W.D.N.C. 1990), this court established a litany of considerations applicable to any motion to transfer made under 28, United States Code, Section 1404(a). In order to determine whether transfer is proper, a balance must be struck between the competing interests. Unless the balance is tipped strongly in favor of the moving party, Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984), plaintiffs' choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden, 1A Moore's Federal Practice, paragraph 0.345[5] at 4360 (Matthew Bender 1990); and the

burden is heavy, <u>Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.</u>, 719 F. Supp. 446, 451 (W.D.N.C. 1989).

> A defendant carries a particularly heavy burden when it moves pursuant to [Section] 1404(a) to transfer an action from a district where venue is proper.  As this court has noted previously, it is "black letter law," that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed."

<u>Phillips v. S. Gumpert Co., Inc.</u>, 627 F. Supp. 725, 726-27 (W.D.N.C. 1986) (citations omitted) (<u>quoting</u> <u>Western Steer Mom 'N' Pop's v. FMT Invs., Inc.</u>, <u>supra</u>, at 265).   As discussed above, a valid forum selection clause shifts that burden to the party resisting transfer in conformity with such agreement.

As provided in <u>Jim Crockett Promotions, Inc.</u>, the considerations relevant to discretionary transfer of venue are, as follows:

1.      The plaintiff's initial choice of forum;

2.      The residence of the parties;

3.      The relative ease of access of proof;

4.      The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5.      The possibility of a view;

6.      The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

Id., at 7-8. Courts should make both a quantitative and a qualitative analysis of the factors. McDevitt & Street Co. v. Fidelity and Deposit Co., 737 F. Supp. 351, 354 (W.D.N.C. 1990).

The Supreme Court has addressed the impact of a forum selection clause on such analysis. In Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), the Supreme Court held, as follows:

Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. **The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus**. In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that

venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.

Id., at 29-30 (emphasis added). Based on the reasoning of Stewart, the presence of a forum-selection clause requires consideration of the convenience of the proposed forum and the fairness of transfer in light of the forum selection clause, id., making such a provision a significant factor in the eleven-step analysis.

As to the weight the forum selection clause should be given in the analysis, the Court in Stewart also provides guidance on this issue:

we disagree with the court's articulation of the relevant inquiry as "whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*." 810 F.2d, at 1069. Rather, the first question for consideration should have been whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case to a Manhattan court.

Id. While plaintiff in essence argues that the court should not even consider the forum selection clause, it would appear based on Stewart that the agreement should be integrated into the court's weighing of considerations as required by Congress under Section 1404(a), because "the instructions of Congress are supreme." Id., at 30. With those issues in mind, the undersigned will conduct the required review:

**a.      The plaintiff's initial choice of forum.**

In this case, plaintiff clearly desires to litigate this matter in the Western District

of North Carolina.  While initially assigning this choice great weight, the undersigned has also considered this choice of forum in light of the forum-selection provision contained in the original contract.  Inasmuch as plaintiff's "initial choice of forum" came subsequent to an agreement requiring plaintiff to litigate this matter in Utah, the undersigned  will give the plaintiff's choice of this forum diminished weight, finding that such factor is neutral.

### b.    The residence of the parties.

This factor is unaffected by the choice of forum provision.  Plaintiff resides in this district and defendants appear to be a corporate and individual residents of Utah.  This factor is neutral.

### c.    The relative ease of access of proof.

This factor is unaffected by the choice of forum provision.  Plaintiff's action is, essentially, for breach of contract and unfair and deceptive trade practices.  While there will most certainly be at least one witness from North Carolina, the alleged conspiracy of which plaintiff complains supposedly occurred in Utah.  This factor favors transfer.

### d.    The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.

In the event of transfer, under Rule 45 it would appear that the witnesses located within this district would be outside the subpoena power of the Utah district court for

trial, but that such witnesses could be subpoenaed for depositions within this district through process issued by this court. In the event any witnesses located in this district were unwilling to attend trial in Utah, such deposition testimony could be admissible as that of an unavailable witness. If, however, this matter were kept here, it would appear that there would be little concern as to compulsory process inasmuch as many of the Utah witnesses would likely be employees or agents of the defendants.

Regardless of where this action is tried, there will be substantial costs to both sides for travel to and from both North Carolina and Utah. Inasmuch as defendants will likely have the bulk of witnesses and it appearing that those witnesses are located in Utah, it is likely that plaintiff will incur the bulk of travel costs.

The choice of forum provision does impact consideration of this factor. In <u>AC Controls Co., Inc. v. Pomeroy Computer Resources, Inc.</u>, 284 F.Supp.2d 357 (W.D.N.C. 2003), this court found that in every diversity action, one side or the other will inevitably be burdened, and that such burden was foreseeable when the parties negotiated the contract containing the forum selection clause. <u>Id.</u>, at 362. While this factor appears initially neutral at best, this factor favors transfer to Utah when considered in light of the forum-selection clause.

> **e.     The possibility of a view.**

This factor is neutral in that there is nothing tangible to view other than material

available on the internet.

**f.      The enforceability of a judgment, if obtained.**

This factor is also neutral inasmuch as a judgment obtained in a federal court in

Utah is - - as is a judgment obtained in this court - - enforceable nationwide.

**g.      The relative advantages and obstacles to a fair trial.**

This factor is neutral in that a fair trial can be obtained in any federal court for

either side.

**h.      Other practical problems that make a trial easy, expeditious, and inexpensive.**

There appear to be no other practical problems outside of the factors previously

considered that make trial any easier here than in Utah.  This factor is neutral.

**i.      The administrative difficulties of court congestion.**

There appears to be no significant difference in court congestion.   This factor is

neutral.

**j.      The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action**.

In addition to a forum selection clause, there is also a clause concerning choice

of laws.  In this case, plaintiff and defendant agreed at the time the contract was entered

into that Utah law would govern. While there is interest in having plaintiff's dispute resolved in this community, inasmuch as plaintiff is a corporate resident of this district, the overriding localized interest would be in Utah inasmuch as that appears to be the locus of defendant's business and the place from which it likely contracts with many other "Sales Partners." Clearly, the Utah courts would be more at home with Utah law governing contracts. This factor favors transfer.

### k. The avoidance of unnecessary problems with conflict of laws.

This factor is neutralized through the choice of laws provisions.

* * *

Having considered all of the factors individually, the undersigned will now consider all the factors cumulatively. Both quantitatively and qualitatively, the factors weigh in favor of transfer to the District of Utah. When the parties' expressed and contracted for preference for that venue is considered, it appears to the undersigned that this court should honor that contractual preference and transfer this matter to the District of Utah. While plaintiff has essentially argued that he was presented with a take-it-or-leave-it or "I accept" contract, and that plaintiff was in an inferior bargaining position, it appears that plaintiff is no newcomer to the world of e-business and in fact represents in the Complaint that plaintiff is a "internet/e-commerce affiliate" and "designs web pages with numerous proprietary features . . . ." Compl. at ¶ ¶ 11-12.

Based on such allegations, it would be difficult to argue that plaintiff would be unfamiliar with the now familiar "I accept" features that saturate the internet.

> It is a commonplace that parties accept unfavorable terms in exchange for desirable outcomes. Defendants do not argue that Fidelcor manipulated the circumstances which resulted in this agreement, nor can they contend that the forum-selection clause itself is unreasonable or unjust. What we have here, is the unremarkable story of a borrower in a weak bargaining position agreeing to a common, albeit displeasing, term. Other than defendants' conclusory allegations, there is no evidence of duress, fraud, or even unfairness.

CIT Group/Credit Finance Inc. v. Lott, 1993 WL 157617, *2 (N.D.Ill. 1993). Nor can it be said that such provisions are anything new in contracts, because forum-selection "provisions such as the one at issue here are commonplace. . . ." 2215 Fifth Street Associates v. U Haul Intern., Inc., 148 F.Supp.2d 50, 58 (D.D.C. 2001).

In this case, plaintiff clearly sought the benefits of earnings commissions that could be generated in directing sales to defendants that were based on inquiries as to nationally known brands. In exchange for such opportunity, it is neither unreasonable nor unfair to expect to be required to litigate a dispute over that contract in the home state of defendants, which likely contracts with other entrepreneurs nationwide. Put another way, the only circumstance that would be surprising is if a nationally known brand or its marketing agency *actually agreed* to be sued by its own franchisees, vendors, licensees, or salesmen in multiple jurisdictions throughout the United States.

### III. Conclusion

While it is clear from the arguments of the defendants that it desired this court to first address the purported arbitration agreement, and to first send this matter to arbitration and either dismiss, stay, or transfer whatever might remain, the undersigned finds that such decisions are better made by the court in which this case will actually be resolved. Thus, the undersigned does not recommend reaching the motions to dismiss or to compel arbitration, leaving those for resolution by the court in the District of Utah.

Having considered the well-reasoned briefs of respective counsel, as well as reviewed current case law, the undersigned will respectfully recommend that the district court, in its discretion, allow defendant's alternative Motion to Transfer Venue under Section 1404(a).

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' alternative Motion to Transfer Venue be **GRANTED**, and that this matter be **TRANSFERRED** to the United States District Court, District of Utah, Central Division, for disposition.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and

recommendation contained herein must be filed within **ten (10)** days of service of same.

Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: October 11, 2007

Signed: October 11, 2007

Dennis L. Howell
United States Magistrate Judge